UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00108-GCM

| LUIS ANTONIO ROSADO, JR., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| FNU LANGDON, et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, [Doc. 7], see 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

I. BACKGROUND

Pro se Plaintiff Luis Antonio Rosado, Jr., ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina. He filed this action on April 11, 2024, under 42 U.S.C. § 1983, against Defendants FNU Langdon, identified as a psychologist at Marion; Cindy Hayes, identified as an employee of Marion; Kevin Freemen, identified as a Unit Manager at Marion; FNU Haynks, identified as an Americans with Disabilities Act (A.D.A.) Coordinator at Marion; and Christine M. Khandelwal, identified as the President of the North Carolina Medical Board, in their individual and official capacities. [Doc. 1 at 1-4].

Plaintiff alleged as follows. When he arrived to Marion's Rehabilitative Diversion Unit

(RDU)[1], he found out from a male psychologist that he was classified as Mental Health Level 1 ("M1"), when he had requested to be Mental Health Level 2 ("M2"). [Id. at 8]. Plaintiff was told that if he "needed [his] meds again" he "could ask to see the psych doctor." Plaintiff "filled out a referral form" and was seen by Defendant Langdon, who told Plaintiff that "it would take up to 6 months to get on case load." [Id.]. After having Plaintiff take a test that he had taken in 2017, which had given him Mental Health Level 3 ("M3") status, Defendant Langdon "state[d] a false claim of malingering symptoms" and "denie[d] to see [him]." [Id.]. Plaintiff filed a grievance about the "A.D.A. Denial" and "the lack of following policy & procedure." Defendant Freeman "stated no error," failed to provide a reason for the refusal of accommodation or address the issue of denial of mental health services," and "proceeded to state false claims." [Id. at 6, 8]. In addition to being denied reasonable accommodations, Plaintiff is "being forced in a cell" for 23 to 24 hours a day and "only allowed Rec when staff allows." [Id. at 8]. Defendant Khandelwal "denied to assist [Plaintiff] with medical/mental health services." [Id. at 6]. Defendants Freeman, Haynks, and Langdon "failed to comply" with "part of the [grievance] process" in violation of the Fifth Amendment. [Id.].

Plaintiff claimed violation of his rights under the Fifth and Eighth Amendments and the A.D.A., 42 U.S.C. § 12101, et seq., and asserted a state law negligence claim. [Id. at 3]. Plaintiff sought monetary relief and termination of Defendants' employment. [Id. at 7, 9].

The Court dismissed Plaintiff's Complaint without prejudice on initial review for Plaintiff's failure to state a claim for relief. [Doc. 6]. As for Plaintiff's ADA claim, the Court noted that Plaintiff did not allege that he has a disability; that he was denied participation in or

---

[1] The North Carolina RDU program is designed to transition inmates out of a segregated housing environment and provide intensive treatment and programming. Moore v. Corpening, No. 1:18-cv-00146-FDW, 2018 WL 4110547, at *2 n.1 (W.D.N.C. Aug. 29, 2018).

the benefits of any prison services, programs, or activities that he would otherwise be qualified for absent his disability; that any such exclusion or denial was because of his disability; or what accommodation Defendants allegedly refused. [Id. at 4]. The Court dismissed Plaintiff's official capacity claims as barred by sovereign immunity. [Id. at 5]. The Court found that Plaintiff failed to state an Eighth Amendment claim because the conditions he alleged were too vague and did not rise to the level of an extreme deprivation necessary to state an Eighth Amendment claim. The Court also noted that Plaintiff failed to allege personal participation by any Defendant relative to Plaintiff's conditions of confinement. The Court concluded that Plaintiff's allegations failed to support that any Defendant was deliberately indifferent to Plaintiff's mental or medical health needs. [Id. at 7]. As to Plaintiff's Fourteenth Amendment claim, the Court noted there is no constitutional entitlement to grievance procedure and Plaintiff, therefore, had failed to state a due process claim. [Id. at 8]. The Court allowed Plaintiff 30 days to amend his Complaint to properly state a claim for relief. [Id. at 8-9].

Now before the Court on initial review is Plaintiff's Amended Complaint. [Doc. 7]. In addition to the five Defendants named in Plaintiff's original Complaint, Plaintiff also names Loris Sutton, identified as the Deputy Secretary of the North Carolina Department of Adult Corrections (NCDAC), and Charles Bumgarner, identified as the Marion Program Director, as Defendants. [Id. at 2-4]. Plaintiff again names all Defendants in their individual and official capacities. [Id.]. Plaintiff alleges as follows.

In 2017, Plaintiff was screened by the North Carolina Department of Public Safety and deemed an M3 inmate. "During this time," Plaintiff was diagnosed with attention deficit hyperactivity disorder (ADHD), attention deficit disorder (ADD), anxiety, and depression with psychotic episodes. Sometime later, Plaintiff was diagnosed with bi-polar disorder and post-

3

traumatic stress disorder (PTSD).  After transfer from Maury Correctional Institution to Foothills Correctional Institution, Plaintiff requested the Therapeutic Development Unit (TDU) for M3 inmates at least six (6) times and has been denied due to "race & age." [Id. at 6, 11].  When Plaintiff arrived at Marion, a psychiatrist told him he was M1 status.  Plaintiff requested numerous "mental health referrals" since arriving at Marion.  Defendant Langdon told Plaintiff it would take six (6) months to be added to the mental health case load as an M2 or M3 offender, which was a "lie."  [Id.].

Plaintiff filed with Defendant Haynks "for A.D.A. due to [his] diagnoises [*sic*] above and asked for reasonable accommodation that an inpatient receives," including reinstatement of M3 status, reinstatement of his medication after a doctor's appointment, two therapy appointments a month, "gain time to put at minimum release," and TDU placement.  [Id. at 6, 8].  This ADA request was denied "with no reason stated." [Id. at 6].  Plaintiff grieved this denial and, during that process, "wrote the medical board about the clear biasness of the psych. dept.," which was dismissed. [Id.].  Regarding the grievance process, Defendant Freeman "laid a false narrative" relative to Steps One and Two and failed to comply with grievance deadlines.  [Id. at 7]. Plaintiff wrote the Medical Board regarding Marion's failure to "tak[e] psychiatric health seriously."  The Medical Board is "biased and did not interfere." [Id.].

Plaintiff talked to Defendant Langdon two or three times about the mental health services.  "She lied" and then told Defendant Freeman that she had seen Plaintiff eighth times since he arrived at Marion, which is untrue.  [Id. at 7]. Defendant Langdon has spoken "on [presumably Plaintiff's] mental health issues in front of other offenders & staff which violates patient confidentiality." [Id. at 8-9].

Plaintiff alleges that under NCDAC policy the RDU is only for inmates found guilty of

4

an A3 offense for assaulting staff resulting in physical injury. [Id. at 9, 11]. Plaintiff alleges that he never assaulted staff and that he was improperly placed in the RDU at Marion in 2022. For six months before his placement in the RDU he was housed in Restrictive Housing for Control Purposes (RHCP) for a "fabricated," unidentified A26 offense and was thereafter placed in the RDU "with no notice." [Doc. 7 at 10]. Plaintiff has been "held behind a cell door" "from Sept. 2022 til now 5/19/2024" "for 23-24 hours a day with no psychiatric help" and has not been allowed to progress through the steps of the RDU according to policy. [Id. at 8, 10]. That is, Plaintiff should have proceeded to Phase Three of the RDU two and a half months ago after completing 10 weeks at Phase 2 Part 2. [Id. at 9-10]. Plaintiff, however, remains at Phase 2 Part 2. [Id. at 10]. The NCDAC "is allowing facilities to breach policey [*sic*] and keep offenders behind a door for extended time." Plaintiff has been "behind a door" from September 2022 until the date of his Amended Complaint. [Id. at 10]. Plaintiff's placement in the RDU is hindering his taking college courses and earning gain time from employment and has amounted to lockdown "for close to 18 months." [Id. at 10-11].

Plaintiff purports to state claims based on the "5th Amendment, 8th Amendment, Indifference, [and] negligence." [Id. at 3]. Plaintiff appears to claim the "psych doctor," presumably Defendant Langdon, was negligent for denying Plaintiff services and failing to help Plaintiff despite Plaintiff having shown an error was made. [Id. at 7].

Plaintiff seeks monetary and injunctive relief, including Plaintiff's removal from the RDU, placement on M3, reinstatement of his medication, and transfer to a different close custody facility; termination of Defendants' employment; and revision of RDU policy to prevent M3 inmates "to be placed in such harsh conditions. [Id. at 12-13]. For injuries, Plaintiff claims "mental & emotional damages" and "breach of client confidentiality." [Id. at 12].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. __, 143 S.Ct. 1444 (2023). The Court will address all claims fairly raised by the Plaintiff's Complaint regardless of the label assigned by Plaintiff.[2]

---

[2] Any claim propounded by Plaintiff not specifically addressed herein has been considered and is

A.  **Eighth Amendment**

1.  **Conditions of Confinement**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A

---

dismissed for Plaintiff's failure to state a claim for relief.

plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state an Eighth Amendment conditions of confinement claim against any Defendant. Plaintiff again fails to allege personal participation by any Defendant relative to Plaintiff's conditions of confinement. That is, Plaintiff alleges that he has been improperly placed in the RDU where he is being subjected to harsh conditions, resulting in near lockdown for approximately 18 months without necessary mental healthcare. Plaintiff also alleges that he has remained on RDU Phase 2 Part 2 status for two and a half months longer than policy proscribes and that he has been denied TDU at least six times. Plaintiff, however, fails to allege which Defendant, if any, are responsible for his allegedly improper placement in RDU, the denial of TDU (or any facts describing the TDU or supporting his eligibility therefore), or the failure to properly advance through the RDU phases. As such, the Court will dismiss this claim.

Even if Plaintiff had so alleged, the conditions alleged by Plaintiff do not rise to the level of an extreme deprivation necessary to state an Eighth Amendment claim based on conditions of confinement. Namely, Plaintiff alleges that he has been "behind a door… for 23-24 hours a day" for approximately 18 months, the first six months of which consisted of RHCP for "a serious (A) charge." [Doc. 7 at 8, 10]. Plaintiff, however, also alleges that, although he has stalled at Phase 2 Part 2, he is progressing through the phases of the RDU program whereby he gains additional out-of-cell time and privileges as he completes them. [See Doc. 1 at 9-10]. Moreover, Plaintiff has not alleged "a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or, for that matter, that

8

any Defendant was subjectively aware of the substantial risk of harm to Plaintiff. See Thorpe v. Clarke, 37 F.4th 926, 933 (4th Cir. 2022) ("Eighth Amendment liability comes into play only where a corrections officer appreciates the harm confinement conditions impose yet chooses to disregard it[.]"). Rather, Plaintiff alleges only "mental & emotional damages." [Doc. 1 at 12].

### 2. Denial of Mental Healthcare

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state such a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. Deliberate indifference "entails something more than mere negligence," but does not require actual purposeful intent. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). As with a conditions of confinement claim, "[i]t requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Rish, 131 F.3d at 1096 (quoting Farmer, 511 U.S. at 837).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation

marks omitted). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff also fails to state an Eighth Amendment claim based on the alleged denial of mental healthcare since arriving at Marion. While the denial of mental or medical health care may give rise to a claim under the Eighth Amendment, Plaintiff's allegations fail to support that any Defendant was deliberately indifferent to his mental or medical health needs. See Farmer, 511 U.S. at 837. Plaintiff alleges only that he was diagnosed with various mental health conditions in 2017; that he was errantly classified as an M1 inmate at Marion despite his request for M3 status; that he requested numerous "mental health referrals" since arriving at Marion; that Defendant Langdon told him it would take six months to be added to the mental health case load as an M2 or M3 offender; that Defendant Langdon lied to Defendant Freeman about having seen Plaintiff eight times since he arrived at Marion; and that Defendant Langdon "breached confidentiality" by talking about mental health issues in front of other inmates. Plaintiff has not alleged that he currently suffers from a serious mental health condition or that any Defendant actually knew of and disregarded an objectively serious condition or risk of harm. Rather, Plaintiff's allegations suggest, at best, an error was made relative to Plaintiff's assigned mental health status on his arrival at Marion and that there is a delay in availability of mental healthcare

10

Case 1:24-cv-00108-GCM   Document 9   Filed 06/12/24   Page 10 of 16

at Marion.³ As such, the Court will dismiss Plaintiff's Eighth Amendment claims based on the conditions of his confinement and deliberate indifference to a serious medical need.

**B.      Fourteenth Amendment**

**1.      Due Process**

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action.  Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).  Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison."  Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

There is no constitutional "entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure."

---

³ To be sure, in Plaintiff's original Complaint, he alleged that Defendant Langdon administered a mental health screening and determined that Plaintiff was "malingering." [Doc. 1 at 8].

Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has nonetheless failed to state a due process claim. As before, his claim is based on vaguely alleged deficiencies in grievance procedure and now also on Defendant Freeman's alleged "false narrative" and delays in processing Plaintiff's grievance. Plaintiff therefore has failed to state a due process claim and it will be dismissed.

### 2. Equal Protection

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). Plaintiff here alleges only that he has been denied placement in the TDU due to race and age, "which is discrimination." [Doc. 7 at 8]. He fails to allege that he has been treated differently from others with whom he is similarly situated or anything more than this conclusory allegation of discrimination. Plaintiff, therefore, has failed to state an equal protection claim and it will be dismissed.

### C. Official Capacity Claims

Plaintiff again purports to sue Defendants in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities

12

cannot be sued for damages thereunder.  Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019).  Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies.  See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).  Moreover, while Ex parte Young "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment[,]" Plaintiff has not stated a claim for which such relief may be ordered in the first place.  McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (citing id., 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).  Plaintiff's official capacity claims, therefore, do not survive initial review and will be dismissed.

### D. Defendants Hayes, Khandelwal, Sutton, or Bumgarner

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation.  See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted).  Plaintiff, however, makes no allegations of personal participation by Defendants Hayes, Khandelwal, Sutton, or Bumgarner.   While Plaintiff alleges that he complained to the North Carolina Medical Board about various issues, he does not allege that Defendant Khandelwal received Plaintiff's letters or that she had any obligation to act relative to Plaintiff's complaints.  Moreover, while Plaintiff alleges that the NCDAC allows facilities to "breach" RDU policy, Plaintiff makes no allegations regarding any personal participation by Defendant Sutton.  The Court, therefore, will also dismiss these Defendants for Plaintiff's failure to state a claim for relief against them.

### E. ADA

13

Although Plaintiff does not specifically claim violation of his rights under the ADA, he names ADA Coordinator Haynks as a Defendant and references the denial of an ADA request "for reasonable accommodation" for his mental health diagnoses, including his unidentified medication. [See Doc. 7 at 6, 8, 12]. The Court, therefore, will address a possible ADA claim.

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State." United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)). "[T]his term includes state prisons." Id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). The duty of reasonable accommodation, however, must also consider whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims). A plaintiff must also establish an actual injury from any alleged ADA violation. See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has again failed to state a claim under the ADA. While the Court will assume Plaintiff has alleged a disability, Plaintiff has not alleged that he was denied participation in or the benefits of any prison services, programs, or activities that he would otherwise be qualified for absent his disability, or that any such exclusion or denial was because of his disability. Rather, Plaintiff complains that he is being denied mental health services that he seeks, including unidentified medication, and that his requests for "reasonable accommodation" have been denied without reason. The denial of proper mental or medical healthcare does not, by itself, support a claim under the ADA. Miller v. Hinton, 288 Fed. App'x 901, 903 (4th Cir. 2008) (unpublished decision) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners"); Spencer v. Easter, 109 Fed. App'x 571, 573 (4th Cir. 2004) (holding the failure of prison official to timely obtain prisoner's medication does not support ADA claim absent a discriminatory intent "due to any alleged disability"). The Court, therefore, will dismiss this claim with prejudice.

To the extent that the Plaintiff seeks relief under North Carolina law, the Court declines to exercise supplemental jurisdiction, as no federal claim has passed initial review. See Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018) (when a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims."); 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed without prejudice.

Because the Court afforded Plaintiff the opportunity to amend his Complaint and he has again failed to state a claim for relief, the Court will dismiss this action with prejudice. See Green v. Wells Fargo Bank, N.A., 790 Fed. App'x 535, 536 (4th Cir. 2020).

## V. CONCLUSION

For the reasons stated herein, the Court will dismiss Plaintiff's Amended Complaint with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Amended Complaint [Doc. 7] is **DISMISSED with prejudice** in accordance with the terms of this Order for Plaintiff's failure to state a claim for relief.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: June 12, 2024

Graham C. Mullen
United States District Judge